TURNER v. THE FIRST NATIONAL BANK OF KEOKUK *et al.*

1. National banks: SUSPENSION OF: WHAT ARE DEBTS AGAINST. Under section 50 of the act entitled "An act to provide a national currency, etc.," the assets in the hands of the receiver of a bank that fails are, when reduced to money, to be ratably divided and appropriated to the payment of all legal liabilities of the association, whether such liabilities are debts, technically so called, or result from the non-feasance or malfeasance of the association in respect of its binding obligations and duties — as from its failure while in possession of some bonds left by an individual with it on special deposit or for safe keeping.

2. Demurrer: PRACTICE. That an allegation respecting the cause of action is stated in the alternative, is not a cause of demurrer. The remedy is by motion, under section 2918 or 2934 of the Revision.

3. Pleading: JOINDER OF CAUSES. Under section 2844 of the Revision, a cause of action arising from tort, may be joined with one arising on contract, if they are between the same parties, in the same right, and have the same venue.

4. Parties: DEMURRER. Where there is a non-joinder of parties, the defendant may demur, but where there is a mis-joinder of parties defendants, he cannot demur. The remedy is by motion to strike out those improperly joined.

5. —— BANKS. In a proceeding for the adjudication of a claim against a national bank that has suspended, arising from its failure to deliver, to the person entitled, special deposits made by him with it, the receiver appointed under the national banking act may be properly joined as a party defendant.

*Appeal from Lee District Court.*

THURSDAY, APRIL 8.

ACTION to recover the value, of $1,500, of seven-thirty bonds of the United States, dated July 15, 1865, left by plaintiff with the bank on special deposit, or "for safe keeping." The bank failed, and the defendant, H. W. Sample, was appointed receiver, by the comptroller of the currency, under the "act to provide a national currency,

etc.," approved June 3, 1864. The petition alleges the deposit of the bonds; the receipt of the interest on the coupons from the cashier of the bank every six months, up to and including January, 1868; the failure of the bank; the appointment of Sample as receiver, and his refusal to allow the claim of plaintiff, or to pay it or any part of it; that the bonds were received by the bank, according to its custom, and in the ordinary course of business; that they were either in the bank at the time of its failure, or were fraudulently removed or embezzled by some officer or agent thereof, by the gross negligence and want of care and prudence on the part of the bank; that the claim is unpaid, and there is no just set-off to it.

An amendment to the petition was filed, alleging that the bank agreed to safely keep said bonds and return them to plaintiff, on demand; that plaintiff has not received said bonds or their value; that he has demanded the return of said bonds, of Sample, receiver, since the failure of said bank, and he refused to deliver the same.

To this petition and amendment the defendant, Sample, receiver, demurred, because, 1. They do not state facts sufficient to constitute a cause of action; 2. It appears therefrom that the relation of bailor and bailee of the bonds existed between the plaintiff and the bank, and no conversion, except in the alternative, is alleged; 3. There is an improper joinder of cause, tort and contract; 4. There is an improper joinder of parties, the bank and receiver; 5. That the plaintiff shows himself a bailor, and not a creditor of the bank; and the receiver cannot be liable for the wrongful acts of the bank. This demurrer was overruled, and the defendant, Sample, receiver, appeals.

*R. P. Lowe* for the appellant.

*Rankin & McCrary* for the appellee.

COLE, J. — I. The main point relied upon in argument by the appellant's counsel, is, that the claim of plaintiff is not a *debt* of the bank, under the 50th section of the act of congress, entitled, "An act to provide a national currency, etc.," approved June 3, 1864. That section is as follows: "That, on becoming satisfied, as specified in this act, that any association has refused to pay its circulating notes, as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a receiver, and require of him such bond and security as he shall deem proper, who, under the direction of the comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to such association, and, upon the order of a court of record, of competent jurisdiction, may sell or compromise all bad or doubtful debts, and, on a like order, sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders, provided for by the 12th section of this act; and such receiver shall pay over all moneys so made to the treasurer of the United States, subject to the order of the comptroller of the currency, and also make report to the comptroller of the currency of all his acts and proceedings. The comptroller shall, thereupon, cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same, and to make legal proof thereof. And, from time to time, the comptroller, after provision shall have been first made for refunding to the United States any such deficiency, in redeeming the notes of such association, as is mentioned in this act, shall make a ratable dividend

*Marginal note: 1. NATIONAL BANKS: suspension of.*

of the money so paid over to him by such receiver, on all such claims as may have been proved to his satisfaction, or adjusted in a court of competent jurisdiction; and, from time to time, as the proceeds of the assets of such association shall be paid over to him, he shall make further dividends, as aforesaid, on all claims previously proved or adjusted; the remainder of such proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held. Provided, etc. * * * *"

We have copied the entire section, it being the best negation which could be made of the position assumed by appellant's counsel. It is argued by counsel that the language "and may, if necessary to pay the debts of such association, enforce the individual liability," etc., limits the liability to "debts," technically so called; or, at least, that the word "debt" necessarily implies the relation of creditor and debtor, and cannot be extended to the obligations resulting from the relation of bailor and bailee. But the error of this strict construction will be seen from the subsequent language of the section, that the comptroller shall give notice to "all persons having *claims*," etc., and that he "shall make a ratable dividend of the money so paid over to him by such receiver, on *all such claims* as may be proved to his satisfaction or adjusted in a court of competent jurisdiction," and from time to time shall pay "*on all claims* previously proved or adjusted," etc. In our opinion, it is reasonably clear, from the language of this section and the entire act, that the assets of the association in the hands of the receiver, or when reduced to money and placed subject to the order of the comptroller, are to be ratably divided and appropriated to the payment of all legal liabilities of the association, whether such liabilities are debts, technically so called, or result

from the nonfeasance or malfeasance of the association in respect of its binding obligations and duties.

II. As to the second ground of demurrer, that it appears from the petition and amendment, that the relation of bailor and bailee of the bonds existed between the plaintiff and the bank, and no conversion, except in the alternative, is alleged, it is only necessary to say, that this manner of alternative allegation is not a ground of demurrer. Rev. § 2876; see also *Royce* v. *Brown*, 3 Practice (N. Y.) 395; *Simpson* v. *Loft*, 8 id. 234; *Andrews* v. *Shaffer*, 12 How. (N. Y.) 441; *De Will* v. *Swift*, 3 id. 280; *Gording* v. *McAlister*, 9 id. 123; *Howell* v. *Frazer*, 6 id. 221. The remedy for such defect is by motion. See Rev. §§ 2918, 2934 *et seq.*; see also *The School Dist.* v. *Pratt*, 17 Iowa, 16; *Byers* v. *Rodabaugh*, id. 53; *Kinyon* v. *Palmer*, 18 id. 377.

*2. DEMURRER: practice.*

III. The third ground of demurrer is, that there is an improper joinder of causes of action, tort and contract. This is not well taken. Section 2844 of the Revision provides that causes of action, of whatever kind, may be joined in the same petition, provided they are between the same parties in the same right, and have the same venue.

*3. PLEADING: joinder of causes.*

IV. The fourth ground of demurrer is, that the defendant, Sample, receiver, is improperly joined as a party with the bank; it appearing from the petition, that said bank has failed, and its powers and functions suspended by the appointment of a receiver, and made incapable of being sued.

*4. PARTIES: demurrer.*

By the fourth subdivision of section 2876, it is made a ground of demurrer, " that there is a defect of parties, plaintiffs or defendants." But it has been held, under statutes identical with this, that a defendant, who is properly joined as a party defendant, cannot demur to the

complaint because others are improperly, or unnecessarily, made defendants. *Pinckney* v. *Wallace*, 1 Abbott (N. Y.) 82; *Voorhies* v. *Baxter*, id. 44. And also, that where there is a defect of parties, by non-joinder, that is, where necessary parties are omitted, the defendant may demur; but where there is a misjoinder, that is, where persons who ought not to be, are made defendants, the defendant with whom they are thus improperly joined, cannot demur, for that reason, and can only take advantage of the misjoinder by motion to strike out the names of those improperly joined. *Dean* v. *English*, 18 B. Monroe (Ky.) 136; *Gregory* v. *Oaksmith*, 12 How. (N. Y.) 134; *Peabody* v. *Wash. Co. Mutual Ins. Co.*, 20 Barb. 339; *Brownson* v. *Gifford*, 8 How. (N. Y.) 389; *Beckwith et ux.* v. *Dargets*, 18 Iowa, 303.

But without resting our decision solely upon this construction of the statute, let us examine the case upon 5. — banks. its merits, in respect of this question. By section 46 of the act aforesaid, it is provided that after the default, or failure of the bank, and notice by the comptroller to the association, "it shall not be lawful for the association suffering the same, to pay out any of its notes, to discount any of its notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it, and *to deliver special deposits*."

From this it is clear that the bank, after its failure, might properly deliver to the plaintiff the bonds sued for; and if they are still in its possession the duty is devolved upon it to deliver the same. If the bonds have come to the possession of the receiver, it would be also very clearly his duty to deliver the same to plaintiff. If they had been converted into money by the bank, and the proceeds placed in its common funds, and in that way passed to the receiver; or by the gross negligence of the bank the bonds were lost, so as to render the bank liable to the

plaintiff for their value; in either alternative of this latter proposition, it seems to us, the receiver is a proper party, as being the active agent, or fiduciary, through whom, under the direction of the comptroller, the affairs of the bank are to be closed and settled.

Under the peculiar and indefinite language of section 50, of the act aforesaid, it is a question of great doubt, whether the receiver or comptroller is the proper party to proceedings for the adjudication of claims spoken of in said section. But since the receiver is upon the ground, and within the same jurisdiction as the bank whose assets, etc., he holds, gives bond and security for the faithful discharge of his duties, and is made the active agent for the protection of the bank and its creditors, we are, for these and other reasons, inclined to, and do, hold, that the receiver is a proper party in proceedings for the adjudication of claims against the bank.

Under our Revision, section 2761, any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff; or who is a necessary party to a complete determination, or settlement of the question, involved in the action." As we have just seen, the receiver is a proper party, as representing an interest adverse to the plaintiff; and since the bank might rightfully and had the legal duty to deliver the bonds to plaintiff, if it still held them, the bank is a necessary party to the complete determination of the question involved. We conclude, therefore, even if the question of misjoinder could be made by demurrer, that there was no error in overruling it on this ground.

V. As to the fifth ground of demurrer, that the receiver cannot be made liable to the plaintiff, a bailor, for the wrongful or criminal acts of the bank, it is only necessary to remark that it is not sought to make the receiver liable, but to make the bank liable, through the receiver.

The point as to the plaintiff being a bailor, rather than a creditor, has been already disposed of.

The positions assumed and argued with the characteristic zeal, learning and ability of the counsel for appellant, as to the rights of a special depositor; the retention of the title by him; that the right or title to such deposits does not pass to an assignee or receiver; the necessity for averment of conversion, or demand and refusal, etc., may well be conceded. In the view we take of the pleadings, these questions do not at all interfere with our duty to order the judgment of the District Court to stand

Affirmed.